**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SANDRA DENICE ADAMS,

    *Plaintiff*,

v.                                CASE NO. 10-CV-10022

COMMISSIONER OF              DISTRICT JUDGE STEPHEN J. MURPHY, III
SOCIAL SECURITY,                MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance (DIB) benefits, and supplemental security income (SSI) benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 16.)

Plaintiff was 39 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 12, 80.) Plaintiff's employment history includes work as a cashier, a finish operator (auto parts cleaner), and a sales representative. (Tr. at 90.) Plaintiff last worked in 2006. (*Id.*)

Plaintiff filed the instant claims (DIB and SSI) on February 1, 2007, alleging that she became unable to work on June 30, 2006. (Tr. at 80-83.) The claims were denied at the initial administrative stages. (Tr. at 47.) In denying Plaintiff's claims, the Defendant Commissioner considered affective disorders and substance addiction as possible bases of disability. (*Id.*) On September 8, 2008, Plaintiff appeared before Administrative Law Judge ("ALJ") John J. Rabaut, who considered the application for benefits *de novo*. (Tr. at 9-19.) In a decision dated November 19, 2008, the ALJ found that Plaintiff was not disabled. (Tr. at 19.) Plaintiff requested a review of this decision on January 4, 2009. (Tr. at 6-7.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on October 30, 2009, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On January 4, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S.

521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective

complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r*

*of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program (SSI) of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since January 26, 2007. (Tr. at 14.) At step two, the ALJ found that Plaintiff's major depressive disorder, mechanical neck and back pain, and polysubstance abuse disorder were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 15-16.) At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. at 18.) At Step Five, the ALJ found that Plaintiff retained the residual functional capacity to perform a limited range of light work. (Tr. at 16-18.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 19.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff has been treated for mental health issues and substance addiction in the past. On June 1, 2005, a Community Mental Health worker completed an assessment which indicated that Plaintiff "communicates clearly," but "has a tendency to whine or talks baby talk talks soft and low when manipulative, when she does not get her way her voice raises to normal tone." (Tr. at 135.) Plaintiff's thoughts were "clear and intact," but she required "some guidance" in decision-making. (Tr. at 135.) It was also noted that Plaintiff "can be very pleasant with staff [f]or a majority of the time however sporadically becomes inappropriate when under the influence of substance abuse." (Tr. at 135.) It was also noted that Plaintiff is independent and "fully possesses" personal care skills, but "needs motivational reminders." (Tr. at 137.)

On August 16, 2005, Plaintiff was evaluated by Laura Morris, Ph.D., who noted that Plaintiff had a history of substance abuse but that "she is clean and is attending the Tri-Cap

Treatment Program," that she "struggles with depression and anxiety and is being treated for these two problems via medication." (Tr. at 133.) Dr. Morris diagnosed Plaintiff with major depressive disorder, recurrent, severe, generalized anxiety disorder, and alcohol and cocaine abuse, both in remission. (Tr. at 134.)

Plaintiff was treated by Gary Vize of the Saginaw County Community Mental Health Authority's physician services. On January 11, 2006, Dr. Vize noted that Plaintiff's "[c]ompliance with psychotropic meds has been sporadic at best, and she has continued to use cocaine during her pregnancy and avoid treatment recommended . . . [s]he reports that she will be compelled to give up her baby as has happened with her other children." (Tr. at 156.) On July 31, 2006, Dr. Vize noted that Plaintiff had recently been arrested for a domestic dispute and had been clean of crack cocaine and sober for two weeks. (Tr. at 151.) On October 6, 2006, Dr. Vize noted that although Plaintiff did "not think the Welbutrin has helped her at all, [she] qualifies this by saying that she has been drinking and this might have confounded the trial, as no doubt it has." (Tr. at 150.)

On February 28, 2006, Plaintiff was admitted to the hospital for depression and anxiety, but upon discharge the next day she was "calm, alert, oriented, coherent." (Tr. at 259-60.) Plaintiff tested positive for cocaine at the time. (Tr. at 259.)

On June 18, 2006, Plaintiff was admitted to the hospital after she had been "found on a stranger's porch." (Tr. at 205.) Plaintiff indicated that the previous day had been the anniversary of one of her son's death and that although she had been sober for 70 days, she had consumed alcohol (tested 0.28) and cocaine and that she could not remember if she had fallen or not. (*Id.*, Tr. at 211.) A CT scan taken at the time was positive, showing "a 5.2 x 1 cm highly attenuated fluid collection in the right parietal area with minimal mass effect suggestive of acute extra-axial hemorrhage, probably epidural hematoma without any underlying bone fracture." (*Id.*) Plaintiff

8

was admitted to the intensive care unit. X-rays of her chest, left humerus, and left elbow were normal, CT scans of the lumbar spine were normal, a liver sonogram was negative, an ultrasound of the left upper extremities was negative, and Plaintiff was discharged two days later. (Tr. at 205-25.)

A chest x-ray taken in November 2006 showed "no active pulmonary disease." (Tr. at 194.) On December 24, 2006, Plaintiff was treated in the emergency room of Covenant Healthcare in Saginaw, Michigan. She asked to speak with a Crisis Intervention worker, but denied any homicidal or suicidal ideation. (Tr. at 199.) Plaintiff was diagnosed with anxiety and depression and was sent to "crisis residential." (*Id.*)

A Psychiatric Review Technique completed in April 2007 diagnosed affective disorders and substance addiction disorders. (Tr. at 316.) The reviewer found that Plaintiff's affective disorder did not meet the diagnostic criteria, but was a determinable impairment of major depressive disorder with psychotic features. (Tr. at 319.) The reviewer also found alcohol abuse and cocaine abuse. (Tr. at 324.) Plaintiff was found to be mildly limited in activities of daily living and maintaining social functioning, and moderately limited in maintaining concentration, persistence or pace. (Tr. at 326.)

A Mental Residual Functional Capacity (RFC) Assessment completed in April 2007 concluded that Plaintiff was moderately limited in the ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, to maintain regular attendance and be punctual within customary tolerances, to sustain an ordinary routine without special supervision, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest

periods, to interact appropriately with the general public, and to set realistic goals or make plans independently of others. (Tr. at 344-45.) No other significant limitations were noted. It was also noted that Plaintiff's "psychological limitations do not appear to interfere with the potential for task activities that are simple in nature" and that she "retains the mental residual functional capacity to perform step one and step two tasks on a sustained basis." (Tr. at 346.)

As of May 2007, Sujeeth R. Putnam, M.D., diagnosed Plaintiff with "[d]epression, not major now." (Tr. at 341.)

Plaintiff testified at the administrative hearing that she had received SSI benefits in the past, but they ended when she was incarcerated after having been convicted of home invasion. (Tr. at 24-25.) Plaintiff indicated that she had used alcohol within a month of the administrative hearing but had not used cocaine since earlier that year because she had been incarcerated in Wayne County for having driven "a car without permission." (Tr. at 33.)

Plaintiff stated that she is able to take care of all of her personal needs and grooming, and that she is able to grocery shop if someone gives her a ride because she no longer has a driver's license. (Tr. at 35-37.) Plaintiff also testified that she watches television, sometimes cooks, goes to church, and goes to two support group meetings sponsored by mental health services. (Tr. at 38-39.) In addition, in her daily activities report Plaintiff indicated that she was also able to do laundry, ironing, and handle her own finances. (Tr. at 114-15.) Plaintiff added, "my hands start hurting when I think too hard." (Tr. at 40.) Plaintiff also testified that the medicine she is taking has helped her "a whole lot" and that she no longer hears voices or sees spirits. (Tr. at 41.)

At the administrative hearing, the ALJ asked the vocational expert (VE) to assume a person with Plaintiff's background

who could perform light work with no climbing ladders, ropes or scaffolds certainly; no crawling, no repetitive extension, flexion, rotation of the neck; work limited to simple, routine and repetitive tasks; employed in a low stress job as defined as only occasional decision making and only occasional changes in the work setting, only occasional interaction with the public, only occasional interaction with coworkers, and that would be with no tandem tasks.

(Tr. at 43.) The VE testified that such a person could perform a reduced range of jobs available in the lower peninsula of Michigan, i.e., 3,000 office jobs, 2,500 assembly positions, and 2,000 packer positions. (Tr. at 42, 44.)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that during the time he qualified for benefits, Plaintiff possessed the residual functional capacity to perform a limited range of light work. (Tr. at 16-19.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in her application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2. Substantial Evidence

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 11.) As noted earlier, if the Commissioner's decision is supported by

11

substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that the hypothetical did not accurately portray Plaintiff's moderate difficulties in social functioning and in maintaining concentration, persistence, or pace. (Doc. 11.) Plaintiff further argues that the hypothetical's limitation "to 'simple, routine and repetitive tasks and only performed in a low-stress work environment requiring only occasional decision-making and only occasional changes in the work setting' does not sufficiently account for the entire 'moderate' limitation in the ability to maintain attention, concentration, persistence and pace." (Doc. 11 at 12; Tr. at 43.)

As indicated above, the hypothetical did account for Plaintiff's limitations as to social functioning and the limitation to simple, routine, and repetitive tasks flows directly from the RFC assessment which found that Plaintiff's "psychological limitations do not appear to interfere with the potential for task activities that are simple in nature" and that she "retains the mental residual functional capacity to perform step one and step two tasks on a sustained basis." (Tr. at 346.) I therefore suggest that the hypothetical questions accurately portrayed Plaintiff's individual impairments in harmony with the relevant objective record medical evidence and Plaintiff's own testimony that she takes care of all of her personal needs and grooming, grocery shops, watches television, sometimes cooks, goes to church, does laundry, irons, handles her own finances, and goes to two support group meetings sponsored by mental health services. (Tr. at 35-39, 114-15.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

3. **Conclusion**

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                s/ Charles E Binder
                CHARLES E. BINDER
Dated: November 30, 2010                United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: November 30, 2010                             By    s/Patricia T. Morris
                                                                         Law Clerk to Magistrate Judge Binder